UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANAY EMMONS,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST STUDENT, INC.,<br><br>    Defendant. | Case No. 19-cv-02964-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 40 |

On April 3, 2020, defendant First Student, Inc. ("First Student") filed the instant motion to dismiss the first, second, third, and tenth[1] causes of action of plaintiff Janay Emmons' Second Amended Complaint ("SAC") for violations of Title VII sex and gender discrimination, Title VII retaliation, violations of the Americans with Disabilities Act ("ADA"), and Breach of Implied Covenant of Good Faith and Fair Dealing, respectively. Dkt. No. 40 (Motion to Dismiss). Pursuant to civil local rule 7-1(b) and General Order 72, the Court hereby VACATES the May 29, 2020 hearing. Defendant's motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The Amended Complaint alleges as follows: Plaintiff was employed by defendant for approximately 5 months, from approximately January 2016 – May 31, 2016, as a bus driver for high school children. Dkt. No. 39 ⁋ 9 (SAC). The SAC alleges that shortly after being hired by defendant, per the advice of her doctor, plaintiff requested being placed on modified work duty due to new

---

[1] Plaintiff concedes the tenth cause of action should be dismissed and therefore the Court will not discuss it further. Dkt. No.44 at 7 (For ease of reference, citations to page numbers refer to the ECF branded number on the upper right hand corner of pages.).

medications she began taking. Dkt. No. 39 ¶ 20. The paperwork plaintiff submitted to defendant in support of her request for modified work duty disclosed plaintiff is transgender. Dkt. No. 39 at ¶ 21. Plaintiff alleges defendant told her she did not qualify for modified work duty because she was not injured on the job. Dkt. No. 39 at ¶ 22. Ms. Emmons was terminated on or about May 31, 2016. *Id*. at ¶ 33.

With respect to the exhaustion of administrative remedies, the SAC alleges:

> 34. On August 24, 2016, Plaintiff initiated the exhaustion of administrative remedies process with the Department of Fair Employment and Housing ("DFEH") and was referred to the Equal Employment Opportunity Commission ("EEOC"), where she also initiated the administrative remedies exhaustion process.
>
> 35. On December 13, 2016, Plaintiff filed a Charge of Discrimination no. 555-2016-01212 (the "First Charge") with the DFEH and EEOC. Plaintiff was acting in pro per when she filed the charge. Plaintiff checked both the "retaliation" and "disability" boxes on the form and described in the charge that she was, among other things, discriminated against for "engaging in protected activities."
>
> 36. On December 19, 2016, the DFEH provided notice to Plaintiff that her First Charge was dual filed with the DFEH and the EEOC, and the EEOC would conduct the investigation.
>
> 37. Thereafter, Plaintiff worked with an investigator of the EEOC. She provided a document to the EEOC that specifically informed of her status as a "transgender" female. She explained this document (which revealed her otherwise not apparent transgender status) had been provided to Defendant right before the wrongful termination course was set in action. Accordingly, Plaintiff's transgender status was included in the investigation that immediately followed the First Charge.
>
> 38. In or about the beginning of March of 2018, during the lengthy EEOC investigation that began with the First Charge, an EEOC investigator suggested to Plaintiff that she should reapply for her position with Defendant to see what its response would be to her application, given Defendant's stated reason for terminating Plaintiff was that Plaintiff had willfully abandoned her position.
>
> 39. On March 27, 2018, Plaintiff reapplied for her position with first student and was wrongfully denied employment.
>
> 40. At the suggestion of the EEOC investigator, Plaintiff incorporated the failure to rehire event into her larger claim that Defendant engaged in a discriminatory and retaliatory course of conduct that began when Plaintiff was working for Defendant, led to her wrongful termination and grew to include the failure to reinstate her to her position.
>
> 41. On August 27, 2018, Plaintiff incorporated the most recent discriminatory act—failure to reinstate—by filing Charge of Discrimination No. 555-2018-1767 (the "Second Charge") with the DFEH and the EEOC. Plaintiff was acting in pro per when she filed the charge. The Second Charge incorporates the First Charge and references it by charge number. Plaintiff, in pro per, did not know the process for amending the First Charge. So, she filed a new one that expressly incorporated her

pending charge to ensure the entire course of discriminatory and retaliatory conduct would come under the purview of the EEOC investigation.

42. On September 17, 2018, the DFEH provided notice to Plaintiff that her Second Charge was also dual filed with the DFEH and the EEOC, and the EEOC would conduct the investigation.

43. Defendant admitted to the EEOC in its response to Plaintiff's Second Charge that that "this [second] charge arises out of a previous charge and series of events between Complaint and Respondent."

44. By January 30, 2019, five months had passed wherein both the First and the Second Charges were simultaneously investigated by the EEOC. On January 30, 2018, Plaintiff received a Right-to-Sue Notice from the DFEH regarding only her First Charge. On information and belief, the Right-to-Sue Notice appears to have been autogenerated due to the amount of time that had passed since the First Charge was initiated. The Second Charge, which incorporated the First Charge, remained open.

45. By March 27, 2019, Plaintiff had retained counsel. On that date, she amended her Second Charge. On March 28, 2019 she requested and was issued a Right-to-Sue Notice on the Second Charge.

46. On April 25, 2019, Plaintiff filed suit and alleged facts regarding the entire discriminatory course of conduct, including the acts that occurred while she was employed, her wrongful termination, and the wrongful failure to reinstate her to her position. All amendments to add additional claims that arise out of these same facts and sets of occurrences relate back to the date of this initial filing under Fed. R. Civ. P. 15(c).

47. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

Dkt. No. 39 at ¶¶ 34-47.

On April 25, 2019, plaintiff filed a complaint ("Initial Complaint") in Alameda Superior Court alleging only state law claims. Dkt. No. 1 at 11. On May 29, 2019, defendant removed the Initial Complaint to this Court. *Id*. On June 26, 2019, plaintiff filed a second complaint ("Second Complaint") in Alameda Superior Court alleging only federal claims. Dkt. No. 41 at 32 (RJN Ex. A). The parties to the Initial Complaint and the Second Complaint were exactly the same. *Id*.; Dkt. No. 1 at 11. On September 12, 2019, the parties filed a stipulation allowing plaintiff to file an "amended complaint adding federal causes of action and making other changes[.]" Dkt. No. 21. On September 16, 2019, plaintiff filed her first amended complaint in this action adding federal causes of action. Dkt. No. 23. On September 20, 2019, plaintiff dismissed the second state court complaint with prejudice. Dkt. No. 41 at 48 (RJN Ex. C).

3

1  Defendant now moves to dismiss the first, second, and third causes of action for violations
2  of Title VII sex and gender discrimination, Title VII retaliation, and violations of the Americans
3  with Disabilities Act ("ADA"), respectively. Dkt. No. 40 (Motion to Dismiss). Defendant argues
4  plaintiff's first and second causes of action for violations of Title VII regarding plaintiff's First
5  Charge (for termination) must be dismissed because she failed to exhaust administrative remedies.
6  Dkt. No. 40 at 16-21. Further, defendant moves to dismiss the first, second, and third causes of
7  action, in their entirety as untimely and on *res judicata* grounds. Dkt. No. 40 at 22-25.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting Twombly, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

**DISCUSSION**

**I.     First and Second Causes of Action for Violation of Title VII – Exhaustion of Administrative Remedies**

Before "commencement of a Title VII action in court, a complainant must first file a charge with the" EEOC. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). The scope of a plaintiff's action in district court depends on the scope of the EEOC charge and investigation. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). The specific claims made in district court must ordinarily be presented to the EEOC. *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir. 1990). The district court, however, has jurisdiction over any charges of discrimination that are like or reasonably related to the allegations made before the EEOC or that could reasonably be expected to grow out of the allegations. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

A plaintiff's claim is reasonably related to the allegations in the EEOC charge "to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002) (finding that plaintiff's EEOC charge was reasonably related to claims for both racial and sexual harassment where the incidents of harassment detailed in her pre-complaint questionnaire related to both race and gender); *Nilsson v. City of Mesa*, 503 F.3d 947, 953 (9th Cir. 2007) (holding that plaintiff's claim for disability discrimination was not related to her EEOC charge for disability retaliation because the EEOC charge merely claimed that the employer retaliated against her for filing a worker's compensation claim, but never alleged disability discrimination). A plaintiff does not sufficiently exhaust administrative remedies "by merely mentioning the word 'discrimination' in his or her EEOC administrative charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002).

Although district courts must "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading . . . there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Id.* at 636 (*quoting B.K.B.*, 276 F.3d at 1100) (internal quotations omitted).

Here, plaintiff's SAC alleges her First Charge, regarding her termination, grew to encompass her claims regarding sex/gender discrimination and retaliation. Dkt. No. 39 ¶¶ 37-40. In support of

1    this allegation, plaintiff points to a letter from her doctor stating Ms. Emmons is transgender – this
2    letter was allegedly provided to Ms. Emmons' manager shortly before she was fired as well as to
3    the EEOC investigator.  Dkt. No. 39 ¶¶ 21, 37.  Based on these allegations, plaintiff has carried her
4    burden, for the purposes of a motion to dismiss, of showing that the First Charge grew to include
5    her claims regarding sex/gender discrimination and retaliation and that she exhausted her
6    administrative remedies for these claims.

7    Defendant raises various arguments challenging the veracity of (1) plaintiff's allegation that
8    the First Charge grew to include the Second Charge and (2)  the relevance of the letter disclosing
9    plaintiff is transgender.  Dkt. No. 40 at 16-21.  While these factual arguments may prevail on a
10   summary judgment motion, they are unavailing in the context of the instant motion to dismiss.

## II.    Timeliness of First, Second, and Third Causes of Action

Defendant argues plaintiff's first, second, and third causes of action as they relate to her First Charge (for termination) must be dismissed as untimely because plaintiff failed to file her federal causes of action within 90 days of receiving her right to sue letter.  Dkt. No. 40 at 22-25.  Plaintiff received a right to sue letter on January 30, 2019 that gave her 90 days to bring federal claims related thereto, that is, until April 29, 2019.  Dkt. No. 39 at 25 (Ex. D to SAC – January 30, 2019 Right to Sue Letter).  The right to sue letter explicitly stated "Your lawsuit under Title VII  [or the] ADA … **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**: or your right to sue based on this charge will be lost. (the time limit for filling suit based on a claim under state law may be different.)" *Id*. (underline/bold emphasis in original).  The first time plaintiff filed federal claims was on June 26, 2019 – nearly 60 days after the April 29, 2019 deadline.  Dkt. No. 41 at 32 (RJN Ex. B – Second State Court Complaint).

Plaintiff argues her federal causes of action regarding her termination are not untimely because they relate back to the April 25, 2019 Initial Complaint.  Dkt. No. 44 at 5-7.  The Court disagrees.  The right to sue notice explicitly warned plaintiff that state law claims may have different deadlines.  Dkt. No. 39 at 25 (Ex. D to SAC – January 30, 2019 Right to Sue Letter).

However, plaintiff's overarching argument with respect to her federal causes of action is that

the Second Charge (for failure to re-hire) was an outgrowth of the First Charge (for termination). If plaintiff's First Charge (for termination) and Second Charge (for failure to re-hire) are not two distinct claims, they should be construed as one EEOC investigation. The right to sue notice for the Second Charge was not issued until March 28, 2019, giving plaintiff until June 26, 2019 to file federal causes of action, making her Second Complaint timely. Dkt. No. 41 at 32 (RJN Ex. B – Second State Court Complaint).

Based on the current record and allegations in the SAC, the Court DENIES defendant's motion to dismiss for untimeliness. While plaintiff's relation-back argument fails, her allegations regarding the relatedness of the First and Second EEOC Charges, for purposes of a motion to dismiss, preserve her federal causes of action regarding her termination. Any factual disputes as to the timeliness of the complaint must be resolved on a full factual record. [2]

### CONCLUSION[3]

Defendant's motion to dismiss the first, second, and third causes of action is DENIED. Defendant's motion to dismiss the tenth cause of action is GRANTED.

**IT IS SO ORDERED**.

Dated: May 27, 2020

SUSAN ILLSTON
United States District Judge

---

[2] Defendant argues plaintiff's federal claims are also barred by *res judicata*. Dkt. No. 40 at 25 FN 4. The Court disagrees. On September 12, 2019, the parties to the instant action stipulated to plaintiff amending her complaint. Dkt. Nos. 21 and 22. She did so on September 16, 2019, and, subsequent to adding the federal causes of action to the instant litigation, dismissed the state court action alleging federal claims with prejudice. Dkt. No. 23 (First Amended Complaint); Dkt. No. 41-48 (RJN Ex. C – Dismissal).

[3] Defendant's request for judicial notice is GRANTED. See Dkt. No. 41.